UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOMPHALAVANH SOPHANTHAVONG,<br><br>                      Petitioner(s),<br>    v.<br><br>PAMELA BONDI, et al.,<br><br>                      Respondent(s). | CASE NO. C25-2405-KKE<br><br>ORDER ON HABEAS PETITION |

      In 1982, when he was five years old, Petitioner Somphalavanh Sophanthavong fled Laos as a refugee, and became a lawful permanent resident of the United States. On November 13, 2007, after a criminal conviction and period of incarceration, Sophanthavong was ordered removed to Laos and taken into U.S. Immigration and Customs Enforcement ("ICE") custody for approximately 90 days before being released on an order of supervision ("OSUP"). At the time, he could not be removed to Laos due to social and political instability in the country. On October 31, 2025, upon arriving home from work, Sophanthavong was detained by ICE agents, and has remained in ICE custody since then. Sophanthavong is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

      Having been detained for over six months since his order of removal became final, Sophanthavong now seeks relief from this Court to: (1) order his release from immigration detention, (2) prevent his re-detention without a hearing, (3) prevent removal to a third country

ORDER ON HABEAS PETITION - 1

"without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings", and (4) bar removal to an unknown third country. For the reasons stated below, the Court will deny Sophanthavong's habeas petition without prejudice, but grant his request to enjoin third-country removal without notice and an opportunity to respond.

## I. BACKGROUND

### A. Procedural Background

On November 26, 2025, Petitioner Somphalavanh Sophanthavong filed a petition for a writ of habeas corpus. Dkt. No. 1. His case was initially assigned to Judge Ricardo S. Martinez. *See* Dkt. No. 5. On February 17, 2026, Petitioner filed with the Court a "motion for final order of judgment on the merits," indicating the motion was an "emergency." Dkt. No. 22. On February 18, 2026, Sophanthavong filed a motion for a temporary restraining order ("TRO") and his case was re-assigned from Judge Martinez to the undersigned. On February 19, 2026, Respondents indicated they did not believe additional briefing was required on the TRO motion "as these issues have been fully briefed and the motion effective[ly] (sic) seeks a decision on the habeas petition." Dkt. No. 21.

### B. Factual Background

In 1982, Petitioner Somphalavanh Sophanthavong entered the United States as a five-year-old with his mother and older brother, after escaping from Laos and living in a refugee camp in Thailand. Dkt. No. 7 at 7; Dkt. No. 9 ¶ 5. They later reunited with Sophanthavong's father in Portland, Oregon. Dkt. No. 1 at 6. His family, including his parents, his wife, and his children continue to live in the United States—he and his wife opened a restaurant in Portland, which they have operated together for ten years. Dkt. No. 1 at 7. Having immigrated from Laos over 42 years ago as a child, Sophanthavong reports having no available travel documents, such as a Lao

passport. Dkt. No. 1 at 25. Further, Laos previously declined to issue him travel documents when he was ordered removed in 2007. *Id.*

In 1995, when he was 16 years old, Sophanthavong, unrepresented by counsel, pleaded guilty in an Oregon state court to committing felony murder as an aider and abettor. Dkt. No. 8-1; Dkt. No. 10 at 7. Sophanthavong was sentenced to 15 years of incarceration. Dkt. No. 8-1 at 3.

After Sophanthavong completed his criminal sentence, an immigration judge issued a final order of removal to Laos on November 13, 2007. Dkt. No. 8-2. On or around February 12, 2008, Sophanthavong was released from ICE custody pursuant to an OSUP after ICE could not remove him to Laos. Dkt. No. 9 ¶ 7; Dkt. No. 8-3 (OSUP signed by Sophanthavong on February 12, 2008).

On October 31, 2025, upon returning home from work, Sophanthavong was re-detained by ICE agents who were parked in his driveway, and was transferred to NWIPC that same day. Dkt. No. 9 ¶ 10; Dkt. No. 1 at 7.

In a declaration in support of Respondents' return, Deportation Officer Jiarong Du stated that "ICE is presently removing individuals to Laos." Dkt. No. 9 ¶ 14. Officer Du explained that ICE Enforcement and Removal Operations ("ERO") does not submit travel document requests "directly to Laos." *Id.* Travel document requests are, instead, provided to a Detention and Deportation Officer ("DDO") "located in ERO headquarters who submits the [travel document] request and coordinates removal." *Id.* Officer Du stated: "It appears that once the information has been provided to the DDO, a [travel document] is issued promptly." *Id.* ¶ 15.

As to Sophanthavong, Officer Du asserts his travel document information was "forwarded to the DDO on December 3, 2025." *Id.* ¶ 16. When Officer Du offered his first declaration on December 10, 2025, Officer Du acknowledged there was an "upcoming removal flight to Laos" in December, but Sophanthavong "was not able to be placed on [the flight]." *Id.* ¶ 17. Officer Du

suggested that Sophanthavong was "eligible for" an additional removal flight to Laos "in the second week of January," and on that basis, found "there is a significant likelihood that [Sophanthavong] will be removed in the reasonably foreseeable future." *Id.* In a subsequent declaration, Officer Du stated that "ERO records indicate that Headquarters Removal and International Operations ('HQ RIO') has obtained a Travel Document ('TD') for Petitioner to be returned to Laos." Dkt. No. 13 ¶ 4.

On February 3, 2026, counsel for Sophanthavong provided a status update, noting that despite Officer Du's assertions, Sophanthavong was not removed in the "second week of January" and asserting that Sophanthavong remained detained at NWIPC. Dkt. No. 16 at 2.

On February 20, 2026, Respondents filed a supplemental declaration by Deportation Officer Anthony Rosa. Officer Rosa stated that "Petitioner is manifested for removal on a charter flight to Laos currently scheduled for March 15, 2026. ICE has a Travel Document for Petitioner. It is anticipated that Petitioner will be transferred out of the NWIPC approximately one week prior to removal." Dkt. No. 24 ¶ 4. The Court then ordered Petitioner to file a supplemental response to address the impact of the Rosa Declaration on Petitioner's claims, wherein counsel for Petitioner confirmed that a travel document had been issued for Petitioner and provided by Respondents. Dkt. Nos. 25, 27. Respondents filed a notice of intent to remove Petitioner. Dkt. No. 26.

## II.   ANALYSIS

A.   **Legal Standard**

1. Habeas petition

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*,

ORDER ON HABEAS PETITION - 4

411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

    2. <u>Legal Framework Governing Detention of Non-Citizens Subject to an Order of Removal</u>

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably

ORDER ON HABEAS PETITION - 5

foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.    The Court Denies Petitioner's Request for Habeas Relief Without Prejudice.**

1. Petitioner's *Zadvydas* claim is denied.

Having been detained for over six months, Sophanthavong's detention is no longer "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. However, in light of Officer Rosa's declaration that ICE has a travel document for Sophanthavong and that Sophanthavong is manifested for a flight to Laos on March 15, 2026, Sophanthavong does not meet his initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Under these circumstances, it appears as though Petitioner's removal is imminent, and he is thus not entitled to release under *Zadvydas* at this time.[1]

2. Petitioner's regulatory and procedural due process claims are denied.

Petitioner also asserts that Respondents' failure to comply with its own regulations—which were intended to ensure procedural due process for noncitizens—warrants habeas relief. Dkt. No. 1 at 25–27.

---

[1] Nothing in this order prevents Petitioner from renewing his request for relief in the event that he is not ultimately removed on the March 15, 2026 charter flight described in the Rosa Declaration.

ORDER ON HABEAS PETITION - 6

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). "Upon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody." 8 C.F.R. § 241.13(i)(3). The regulation not only requires a prompt informal interview, but also explains that the purpose of this requirement is "to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At this informal interview, "the [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

Here, Sophanthavong received both a notice of revocation and an interview, during which he provided a written statement. *See* Dkt. Nos. 8-6 (Notice of Revocation dated 10/31/25); 8-7 (informal interview form signed and dated on 10/31/25). The Notice of Revocation states that ICE determined "that there are changed circumstances in your case," that ICE was working to "[u]pdate travel document request and work with HQ RIO to obtain TD" and that "Laos is currently issuing TDs." Dkt. No. 8-6. The notice further explained that his "case is under current review by Laos for the issuance of a travel document." *Id.* Respondents also provide Petitioner's written statement, which he provided as part of his prompt informal interview. Dkt. No. 8-7. In his written statement, Petitioner expressed that he had been in compliance with ICE's demands and had "never miss[ed] any scheduled appointment." *Id.* at 3. However, Petitioner did not refute Respondents'

ORDER ON HABEAS PETITION - 7

position that his removal was imminent, nor argue that he lacked sufficient time or information to do so. Accordingly, the Court will not grant habeas relief on these grounds.

3. Petitioner's substantive due process claim is denied.

Petitioner also asserts that his detention violates substantive due process, and supports this contention with articles chronicling human rights abuses that have taken place in immigrant detention centers, including NWIPC (where he is detained). Dkt. No. 1 at 27. Respondents counter that Petitioner has not provided evidence that his detention is "in any way punitive." Dkt. No. 7 at 14.

Petitioner's habeas petition does not provide sufficient particularized facts regarding the conditions of his re-detention to support a substantive due process claim. Though Petitioner alleges that ICE detained him in his driveway (Dkt. No. 1 at 7) and cites to articles documenting abuses occurring in immigration detention in general (*id.* at 27), "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *Oosthuizen v. Ashcroft*, 96 F. App'x 494, 495 (9th Cir. 2004) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Petitioner provides little more than "conclusory allegations" that his detention is unconstitutional, and therefore does not meet his burden of demonstrating by a preponderance of the evidence that he is entitled to habeas relief on this ground. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). As such, the Court will not grant habeas relief on Petitioner's substantive due process claim.

In sum, the Court denies Petitioner's request for habeas release. The Court next considers Petitioner's requests for injunctive relief regarding third-country removal.

**C.    Membership in the *D.V.D.* class does not preclude Sophanthavong from asserting his third country-removal claims.**

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 7 at 16–18. For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Sophanthavong's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

Sophanthavong's due process claim is not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D. See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *see also Arenado-Borges*, 2025 WL 3687518, at *6.

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 7 at 17 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when

ORDER ON HABEAS PETITION - 9

another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893. Here, ample authority supports the Court's exercise of jurisdiction over Sophanthavong's third-country removal claims.

Finally, the Government contends that Sophanthavong's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding" on Sophanthavong as a member of the *D.V.D.* class. Dkt. No. 7 at 16–17. For the reasons thoroughly explained in *Nguyen*, the Court disagrees. *See* 796 F. Supp. 3d at 730–33; *see also Kumar*, 2025 WL 3204724, at *8 (adopting *Nguyen*'s reasoning); *Arenado-Borges*, 2025 WL 3687518, at *6 (same).

In sum, Sophanthavong's membership in the *D.V.D.* class does not prevent the Court from adjudicating his claims for individual relief in this habeas action.

**D.     The Court Will Grant in Part Petitioner's Requests for Injunctive Relief.**

Sophanthavong also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a third country, or if the Government re-detains him. Dkt. No. 1 at 30. Specifically, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity to respond, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id.* While the record suggests Petitioner's removal to Laos is imminent, such that his third-country removal claims are not at issue, it is also undisputed that Respondents have twice failed to effectuate Petitioner's removal to Laos in the past 60 days. As such, and as detailed below, because Petitioner has articulated reasonable fears of removal to a third country in the event he is not ultimately removed to Laos, the Court will reach these claims.

Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on Petitioner's third-country removal claims if Sophanthavong met the standard

ORDER ON HABEAS PETITION - 10

for a permanent injunction. *See* Dkt. No. 1 at 4; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

    1. <u>Sophanthavong is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal.</u>

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before

ORDER ON HABEAS PETITION - 11

an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen*, 796 F. Supp. 3d at 739.

Against this legal backdrop, Sophanthavong requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal if he has a fear of persecution or torture in that country in reopened removal proceedings. Dkt. No. 1 at 30. In support, Sophanthavong cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard." *Id.* at 23–24. Respondents argue that Sophanthavong's claims regarding third-country removal are too speculative, and that DHS policy already provides the protection he seeks, citing the ICE policy memo. Dkt. No. 7 at 15–16.

First, Sophanthavong's claims are not speculative. He has pleaded facts regarding the implementation of the Government's third-country removal policy that Respondents do not address. Dkt. No. 1 at 20–24. And, as noted above, Petitioner's removal to Laos has been twice-delayed to date. Moreover, as this Court has previously observed, without a requirement that ICE notify Sophanthavong of its intent to remove him to a third country and the guarantee of a meaningful opportunity to respond, he could be put on a plane without being told where he is going and forever lose the opportunity to express a reasonable fear of persecution or torture or seek judicial intervention. Such removals have been well-documented by the courts and the press. *See e.g.*, *Nguyen*, 796 F. Supp. 3d at 733–74 (collecting cases); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *9 (W.D. Wash. Dec. 23, 2025) (discussing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)).

Second, Respondents argue the ICE policy memo supports their promise to provide sufficient notice in advance of any third-country removal. Dkt. No. 7 at 16. As this Court and numerous others have consistently held, the procedures set forth in the ICE policy memo fall well

ORDER ON HABEAS PETITION - 12

short of what the *Aden* court and others in this district have found due process and the INA require. Thus, the Court will grant Sophanthavong's request for relief. Should Respondents take steps to remove him to a country other than Laos, they must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an IJ under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

2. <u>Sophanthavong's request to enjoin third-country removal is denied without prejudice.</u>

Sophanthavong argues that ICE's third-country removal policy is punitive such that it violates his Fifth and Eighth Amendment rights and seeks to enjoin the Government from removing him to any third country on that basis. Dkt. No. 1 at 28–29. As noted above, numerous courts, including this one, have held the Government's third-country removal policy does not comport with due process. *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The Government does not address this growing body of legal authority, nor does it dispute the underlying factual allegations supporting it. Instead, Respondents argue that Sophanthavong has pleaded insufficient facts to support either a facial or as-applied challenge to the government's third-country removal policy. Dkt. No. 7 at 18–19.

The Court agrees with Respondents that the present record does not support such a broad injunction. Rather, as detailed above, this order requires the Government to provide Petitioner with due process in effectuating any future third-country removal. As such, on this record, it is

ORDER ON HABEAS PETITION - 13

not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time. Nothing in this order prevents Petitioner from pursuing additional relief if warranted by future events. *See Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026).

Finally, because they seek the same relief as his habeas petition, the Court will deny Sophanthavong's pending TRO motion and motion for final order of judgment on the merits. Dkt. Nos. 17, 22.

### III. CONCLUSION

The Court DENIES Sophanthavong's habeas petition without prejudice. Dkt. No. 1.

1. It is further ORDERED that if Respondents take steps to remove Sophanthavong to a country other than Laos, they must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

2. The Court DENIES Sophanthavong's motion for final order of judgment on the merits and TRO motion. Dkt. Nos. 17, 22.

Dated this 6th day of March, 2026.

Kymberly K. Evanson
United States District Judge